OLUDOTUN AKINDE—PLAINTIFF PRO-SE

485 EAST LINCOLN AVENUE, APT 216

MT VERNON, NY 10552



VS

NEW YORK CITY HEALTH AND HOSPITAL CORPORATION (DEFENDANT)

C/O HARLEM HOSPITAL CENTER

MS. SHARI SINGLETON

LABOR RELATIONS

506 LENOX AVENUE

WP BUILDING, 6TH FLOOR

NY, NY 10035

16-cv-8882

**ORDER TO SHOW CAUSE.**

1. ***PLAINTIFF IS ASKING THE UNITED STATE SOUTHERN DISTRICT COURT OF NEW YORK TO ENFORCE THAT THE DEFENDAT, NYC. HHC COMPLY WITH THE DUE PROCESS OF ITS REGULATION .1. POLICY.***
2. ***PLAINTIF REPORTED AN INCIDENT TO HIS SUPERVISOR, MR. MARK SOLLAZZO ON SEPTEMBER 12, 2016 THAT HE SAW THREE EMPLOYEES OF HARLEM HOSPITAL IN FRONT OF HIS HOUSE ON TWO DIFFERRENT TIMES AND TOOK THEIR PICTURES.***
3. PLAINTIFF REPORTED THE INCIDENT BECAUSE THE DEFENDANT STAFF STANDING IN FRONT OF HIS HOUSE IN MOUNT VERNON, WESTCHESTER COUNTY, NEW YORK WHICH IS ABOUT FIFTEEN MILES FROM HARLEM HOSPITAL LOCATION IN NEW YORK CITY. THE DEFENDANT STAFF DO NOT LIVE IN MOUNT VERNON, NY OR ANYWHERE IN WESTCHESTER COUNTY.
4. PLAINTIFF WAS CONCERNED BECAUSE THE NEW YORK STATE DIVISION OF HUMAN RIGHTS UPON INVESTIGATION FOUND PROBABLE CAUSE IN 2013 THAT HHC /HARLEM HOSPITAL DISCRIMINATE AGAINST HIM.
5. PLAINTIFF ATTORNEY WAS JUST ALLOWED BY THE NYS DIVISION OF HUMAN RIGHTS TO SUE DEFENDAT IN A CIVIL SUIT AFTER THE DEFENDAT LOST THEIR APPEAL WITH THE NYS SUPREME COURT IN 2015. THE PLAINTIFF ATTORNEY FILED A CASE AGAINST DEFENDANT IN September 2015.

6. *<u>DEFENDANT HAVE BEEN RETALITING COVERTLY AND OVERTLY AGAINST PLAINTIFF SINCE PLAINTIFF FILED HIS LAW SUIT IN SEPTEMBER 2015.</u>*
7. *<u>THE HARLEM STAFF IN FRONT OF PLAINTIFF HOUSE WERE A SIGN OF INTIMIDATION OF PLIANTIFF BY DEFENDANT.</u>*
8. *<u>ON SEPTEMBER 12, 2016, PLAINTIFF SHOWED THE PICTURES TO HIS IMMEDIATE SUPERVISOR, MR. MARK SOLLAZZO WHO REPORTED THE INCIDENT TO THE DEFENDANT LABOR RELATIONS.</u>*
9. *<u>ABOUT THIRTY MINUTES LATER, MS. SHARI SINGLETON FROM THE LABOR RELATIONS AND A HARLEM HOSPITAL POLICE OFFICER SHOWED UP IN THE PLAINTIFF OFFICE WITH A HAND DELIVERY LETTER INVOLUNTARILLY PLACING THE PLAINTIFF ON COMPULSARY MEDICAL LEAVE OF ABSENCE WITHOUT PAY FOR ONE YEAR WITHOUT COMPLYING WITH REGULATION.1. DUE PROCESS WHICH INCLUDE, PRE HEARING, Reg.1. Section. III.A, Page 1-2, HEARING BY PERSONEL REVIEW BOARD, Reg.1 Section 7.A.B.C, Page 1-6 Of the Reg.1 booklet, OR PHYSICIAN EXAMINATION, Reg.1 Section 3.B, Page 1-4 Reg. 1 . Policy booklet.</u>*
10. *<u>DEFENDANT ACTION ON SEPTEMBER 12, 2016 CONTRAVENS SECTION 6.2 OF REG. 1 WITHOUT A PHYSICIAN RECCOMMENDATION. SEE PAGE 1-6, SECTION 6.A.B, C OF THE ENCLOSED REG.1 POLICY BOOKLET. PLAINTIFF ACTION OF SEPT 12, 2016, showing pictures does not constitute a danger to any one or the operation of the hospital.</u>*
11. DEFENDAT THEN SENT PLAINTIFF TO THE HHC APPOINTED PHYSICIAN AFTER ON OCTOBER 19, 2016 AND SENT THE PHYSICIAN FABRICATED DOCUMENTS THAT WERE NEITHER DISCUSSED NOR SHOWN TO PLAINTIFF NOR RELEVANT TO THE EVENT OF SEPTEMBER 12, 2016 TO JUSTIFY AND LEGITIMIZE THE DEFENDANT ILLEGAL ACTION OF SEPTEMBER 12, 2016. THE DEFENDANT STAFF ADMITTED AND SIGNED DOCUMENT THAT SHE SAW THE PICTURES VERIFIED BY THE HOSPITAL POLICE. SEE DOCUMENT DATED SEPTEMBER 12, 2016.
12. *<u>Plaintiff wrote an objection to being placed on Involuntary Leave of Absence In accordance to section 7 paragraphs A, B and C of REGULATION.1 Policy on page 1-6 of the regulation 1. Policy and the plaintiff cannot be placed on involuntary medical leave of absence until a hearing by the defendant Personnel Review Board is completed and a notice of the hearing result is sent to plaintiff pursuant to Section 12, .A.B. C on Page 1-8 of Regulation.1 policy.</u>*
13. DEFENDANT SENT MORE COMPLAINT ABOUT PLAINTIT LABELLED Appendix A to the physician even after plaintiff consulted the physician on October 19TH 2016 that was never submitted for my review until after the evaluation, received by me on October 28, 2016.;

14. The physician Dr. Rahtz, improperly relied upon past findings and made up evidence by defendant to reach his decision in contravention of Regulation 1, Sec III.C.5.b,)
15. *__Plaintiff should continue to draw regular salary until the determination of the personnel Review Board hearing officer is sent to him that he is placed on involuntary leave of absence pursuant to SECTION 12.A.B.C of Regulation 1. Policy on page 1-8 of Regulation. 1. Policy booklet.__*
16. *__Plaintiff action on September 12, 2016, showing defendant staff in front of his house did not warrant a belief that plaintiff is a potential danger to himself, other staff, properties or would seriously interfere with operations of the hospital.__*
17. *__Placing plaintiff on involuntary medical leave of absence by the defendant without complying with the Regulation.1. Due process amount to covert retaliation by the defendant which is illegal.__*
18. *__Plaintiff is asking to be returned back to work and drawing regular salary in accordance to Regulation.1 Policy due process with immediate effect.__*

DOCUMENTS ATTACHED

A. *__Regulation .1 policy booklet__*
B. *__HHC letter from the office of Labor Relations dated September 12, 2016.__*
C. *__Plaintiff letter of objection to regulation. 1. Policy.__*
D. *__New York State Division of Human Rights Determination after investigation of Probable cause for discrimination by the defendant__*.

Oludotun Akinde.   11/14/16

Plaintiff Pro-Se.

*NYC HHC Rule 6, Section 6.2*
*Reg 1*

## REGULATION NO. 1

## UNSATISFACTORY JOB PERFORMANCE OF PERMANENT EMPLOYEE RESULTING FROM MEDICAL DISABILITIES

This Regulation sets forth the steps to be taken when dealing with all permanent Group 12 employees whose job performance is unsatisfactory due to a medical disability in accordance with Rule 6, Section 6.2 of the Corporation Personnel Rules and Regulations. In this regulation, a "medical disability" shall include both physical and mental conditions. It shall not include those medical disabilities resulting from occupational illness or on-the-job injuries, as described in New York State Worker's Compensation Law or Section 7.3.4 a) & b) of the Corporation's Personnel Rules and Regulations.

I. **SCOPE:**

This regulation applies solely to all permanent Group 12 employees (competitive, non-competitive and labor class).

II. **POLICY:**

    A.    Continuing medical problems shall not constitute an acceptable excuse for unsatisfactory performance. As used in this regulation, "unsatisfactory performance" includes incompetence and/or misconduct.

    B.    Each Corporate facility is responsible for compliance with the Americans with Disabilities Act. When the employee is unable to perform the duties of his or her position, it must be determined whether the essential duties can be performed with or without a reasonable accommodation. If the requested accommodation is reasonable, proceeding pursuant to this operating procedure shall cease and such accommodation shall be made.

    C.    When in the judgment of the Director of Human Resources (or designee) an employee is unable to perform the essential duties of his/her position by reason of a medical disability, other than a disability resulting from occupational injury or disease, the Appointing Officer (or designee) may require an employee to undergo a medical assessment to be conducted by a physician selected from the Personnel Review Board Panel of Physicians.

D. Continuing unsatisfactory performance due to a medical disability may constitute the basis for placing an employee on a leave of absence for up to one year. Continuing inability to perform thereafter may result in separation from employment.

III. **PROCEDURE:**

A. **Pre-hearing involuntary leave of absence**
Notwithstanding the procedure set forth below, if the facility's Appointing Officer (or designee) determines that there is probable cause to believe that the continued presence of the employee on the job is a potential danger to persons or property, or would seriously interfere with operations, he/she may place the employee on involuntary leave of absence pending the medical assessment, hearing, and final determination of the Appointing Officer (or designee).

B. **Disciplinary Process**
Where the disciplinary process has been invoked, this process shall be followed.

1. If, during the course of pre-disciplinary or disciplinary procedure, there is reason to suspect that the misconduct and/or incompetence, which is the basis for the pre-disciplinary or disciplinary procedure, may be due to a medical disability, this Regulation should be followed.

2. If the employee's performance warrants pre-disciplinary measures (e.g., counseling, warning notice), and, if the performance or disciplinary conduct appears to be related to a medical problem, the supervisor, in consultation with the Director of Human Resources, may offer whatever assistance is appropriate. This may include, but is not limited to, reasonable accommodation, upon such request by the employee; a leave of absence; counseling and personal services (where available), and referral to the Occupational Health Service (OHS).

   a. Any offer of assistance, and the employee's response, should be noted in a memorandum of Counseling or Warning Notice form.

   b. If a reasonable accommodation is not possible, or assistance is not available, the matter is to be referred to the Director of Human Resources for the initiation of this Operating Procedure.

1-2

3. Where the employee's conduct involves acts of a "more serious nature," as defined in Operating Procedure 20-10, and disciplinary action is warranted, or where the preliminary steps of counseling and/or warning have been exhausted, the supervisor shall refer the matter to the facility's Director of Human Resources for disciplinary action.

   a. If at the disciplinary meeting or hearing it is determined that the cause of the employee's misconduct or incompetence may be based on a medical disability, the review officer shall, at his/her discretion, offer the employee the option of taking a medical leave of absence for up to one (1) year, subject to submission of appropriate documentation.

   b. If the employee requests an accommodation, rather than leave of absence, the Director of Human Resources must determine whether the accommodation is reasonable as set forth by the Americans with Disabilities Act, and will enable the employee to perform the essential functions of his/her position with such reasonable accommodation.

   c. If the employee does not accept the offer of a medical leave of absence, and no reasonable accommodation is possible, the review officer shall, at his/her discretion, discontinue, and hold in abeyance the disciplinary hearing process until a determination of medical fitness has been made pursuant to this Regulation.

C. **Involuntary Medical Leave of Absence**

   1. If an employee's unsatisfactory job performance appears to be due to a medical disability and the employee refuses to voluntarily take a medical leave of absence and disciplinary action is not presently an effective response, this process must be followed in order to determine the employee's fitness for duty.

   2. Responsibility of Department
      It shall be the responsibility of the Department Head of the employee to send the following information to the Director of Human Resources:

      a.    Documentation, including specific incidents with dates, detailing behavior which is the basis for believing that the employee is not fit to perform his/her duties, with or without reasonable accommodation, due to a medical disability, and

      b.    The functional position description for the employee.

3.    <u>Responsibility of the Director of Human Resources</u>:
Once the Director of Human Resources receives the information from the Department Head, the following steps shall be taken:

      a.    <u>Appendix "A"</u>
The Director of Human Resources shall prepare a written statement containing the facts and providing the basis for determining that the employee is not fit to perform the duties of his/her position, with or without reasonable accommodation (otherwise known as "Appendix A"). Appendix "A" shall contain:

          i.    A precise description of the nature of the employee's conduct or disability, including dates, time and places of the behavior; and
          ii.    The manner in which it interferes with the performance of the employee's duties; and
          iii.    The effect on the facility's operation, personnel, patients and/or public.

      b.    <u>Appointment of Physician</u>

          i.    The Director of Human Resources shall appoint a physician from a panel of physicians designated by the Personnel Review Board (PRB) to conduct the examination of the employee and shall schedule examination appointment for the employee with the physician prior to sending notice to the employee.

          ii.    The following documents must be sent to the appointed physician prior to the examination of the employee:
- Appointment letter;
- Appendix "A";

- Notice to the employee;
- Documentation supporting incidents described in Appendix "A"; and
- Functional and Corporate position descriptions for employee's title.

    c.    Letter to Employee

The Director of Human Resources shall send a letter to the employee informing him/her that he/she is to undergo a medical examination and the basis for the ordered examination. The letter shall be sent by first class, registered or certified mail, return receipt requested. The letter shall contain the following information:
   i. Name, address and telephone number of the physician who is to conduct the examination;
   ii. Appendix "A." (See, Section III.C.3.a, above); and
   iii. The date of the appointment with the physician as scheduled by the Director of Human Resources.

4. Failure to undergo medical assessment

   An employee's failure to follow a directive to undergo a medical assessment may constitute an act of misconduct and subject the employee to disciplinary action.

5. If the Findings of the Physician are that the employee is fit to perform his/her duties, with or without reasonable accommodation, this procedure ends.

   a. If the conduct by the employee, which led to this procedure, is disciplinable in nature, or if the disciplinary proceeding had been held in abeyance pending the completion of this procedure, the facility may proceed in accordance with Operating Procedure 20-10.

   b. The physician's findings may not be used as evidence in any future action concerning the employee, except as contradiction to any claim of the employee claiming disability as a defense to the disciplinary charges.

6. <u>If the Findings of the Physician are that the employee is not fit to perform his/her duties, with or without reasonable accommodations, this procedure continues.</u>

   a. <u>Notice to the employee</u>
   The Director of Human Resources shall notify the employee that he/she is being placed on medical leave of absence.

   b. <u>Content of the notice to the employee</u>
   The notice directing a medical leave shall be in writing and shall be served upon the employee in person, or by first class, registered or certified mail, return receipt requested. It shall state the reasons for the leave and the date on which the leave of absence, of up to one (1) year, shall commence and terminate, which commencement date shall be not less than ten (10) working days from the date of personal service or not less than ten (10) workdays plus five (5) days, if the notice was served by mail. The notice shall also inform the employee of appeal rights. (A sample letter is annexed.)

7. <u>Objection to involuntary medical leave of absence</u>

   a. The employee has ten working days from service of this notice to submit a written objection and a request for a hearing with the employee's Director of Human Resources. Filing must be either in person or by first class, certified or registered mail, return receipt requested.

   b. Once the employee requests a hearing pursuant to this regulation, the employee <u>cannot</u> be placed on an involuntary medical leave of absence until after a hearing is conducted, and a final determination is made by the facility's Appointing Officer (or designee), except as stated in Section III.A., above.

   c. Upon receipt of the written objection and request for hearing by the employee or his/her representative, the Director of Human Resources shall send the physician's report and recommendation to the employee, and upon the employee's request, to his/her personal physician and/or upon his or her authorized representative.

8. <u>Transmittal of Documentation to Corporate Office of Labor Relations</u>

   a. Upon receipt of the written objection to the involuntary medical leave of absence, the Director of Human Resources shall send the following information to the Corporate Office of Labor Relations:
      i. Appendix "A;"
      ii. All documentation that was sent to Physician;
      iii. Physician's Report;
      iv. Functional and Corporate position descriptions; and
      v. All supporting documentation;
      vi. The employee's letter objecting to the involuntary medical leave of absence and request for a hearing.

   b. Upon receipt of the documentation from the facility Director of Human Resources, the Corporate Office of Labor Relations shall submit the request for hearing, and supporting documentation to the PRB and request that a hearing be scheduled. The hearing should be held within thirty (30) days of receipt of the employee's written objection.

9. <u>Failure to object to involuntary medical leave of absence</u>

   If the employee does not serve a written objection to the involuntary medical leave of absence in accordance with Section III,B.7, above, the involuntary medical leave of absence shall become effective on the date stated in the letter (See, III.C.6.a. and b.) and shall commence for a period of up to one (1) year.

10. <u>Hearing</u>

    a. Upon receipt of the documentation from the Corporate Office of Labor Relations, in accordance with Section III.C.8.b. above, the PRB shall appoint a Hearing Officer to conduct the hearing.

    b.    Upon the appointment by the PRB, the Hearing Officer shall have all the powers of the Appointing Officer. A written transcript of the hearing shall be made. A copy of the transcript of the hearing shall, upon request of the employee or his/her representative, be transmitted to him/her without charge.

    c.    The employee may be represented at the hearing by an attorney or a certified union representative.

    d.    The burden of proof is on the party alleging unfitness.

    e.    The Hearing Officer's recommendations and record of the hearing (transcript) shall be forwarded to the Appointing Officer (or designee) for review.

11. Determination

    a.    The Appointing Officer (or designee) shall make a final determination within ten (10) working days of receipt of the hearing officer's report and recommendation. The final determination shall be provided to the employee and his/her attorney or representative.

    b.    The Appointing Officer (or designee), upon receipt of the Report and Recommendation, transcript and exhibits may:
        i.    uphold the original proposed notice of leave of absence, or
        ii.    withdraw such notice, or
        iii.    modify the notice as appropriate.

12. Notice to Employee

    a.    The Appointing Office (or designee) shall notify the employee of the final determination in person or by first class, registered or certified mail, return receipt requested.

    b.    If the employee is placed on an involuntary medical leave of absence, the employee may draw all accumulated unused annual, sick and overtime leave.

    c.    The notice shall contain the date of the commencement of the leave of absence of up to one (1) year, and inform the employee of his/her right to appeal.

13. Right to Appeal

    a. The Appointing Officer (or designee) shall notify the employee of his/her right to appeal the final determination to the PRB.

    b. The PRB may conduct an inquiry, at its discretion, and may direct reinstatement if it finds the action of the Appointing Officer was arbitrary or capricious. The determination of the PRB shall be final and binding on both parties; however, that determination may be reviewed in accordance with Article 78 of the civil practice law and rules (CPLR).

**D.**  **Returning From Medical Leave of Absence**

1. An employee placed on medical leave pursuant to this Regulation, may, within one year after the commencement of his/her leave of absence, or at any time thereafter until his/her employment status is terminated, make application to the Director of Human Resources for a medical examination by a physician from the PRB panel of physicians (other than the physician who examined him/her if leave was involuntary).

2. If, upon medical examination, the physician certifies that the employee is fit to perform the duties of the position, the Appointing Officer (or designee) shall so notify the employee within ten (10) working days of receipt of the physician's report whether he/she is to be returned to duty. If the employee is to be returned to duty, that should be accomplished with a reasonable period of time.

3. If the physician certifies that the employee is still not medically fit to perform the duties of the position, the employee may appeal that determination to the PRB. The PRB may conduct an inquiry, at its discretion, and may direct reinstatement if it finds the action of the Appointing Officer (or designee) arbitrary or unreasonable. The determination of the PRB shall be final and binding on both parties; however, that determination may be reviewed in accordance with Article 78 of the CPLR.

4. If the employee does not apply to be returned to duty within the prescribed period of the leave, or if the employee has applied to be returned to duty but has been found to remain unfit to return to duty, or if the employee does not contact the Corporate facility, his or her employment status may be terminated at the end of the one year leave of absence.

   a. Notice shall be sent to the employee of the effective date of termination.

   b. The letter shall be sent by first class, registered or certified mail, return receipt requested.

   c. A copy of Section 7.3.4 of the Corporation Personnel Rules and Regulations shall be annexed to the notice of termination, which sets forth the individual's rights concerning requests for reinstatement following the termination of his or her disability.

485 East Lincoln Avenue, Apt 216

Mt Vernon, New York 10552

September 13, 2016

Ms. Shari M. Singleton

Labor Relation Specialist

New York City Health and Hospital Corporation

Harlem Hospital center.

506 Lenox Avenue, NY, NY 10037

Sir/Madam,

<b><u>Re: OLUDOTUN AKINDE</u></b>

## *NOTICE OF OBJECTION TO THE IMPOSITION OF THE INVOLUNTARY MEDICAL LEAVE OF ABSENCE ON ME.*

This is in response to your letter dated September 12, 2016 and delivered to me by hand on the same day at about 3.00PM imposing a medical leave of absence on me in accordance to Regulation 1 policy of the NYC Health and Hospital Corporation.

In accordance to section 7 and paragraphs A, B and c on page 1-6 pf the regulation 1. Policy, I am hereby notifying you of my objection to my being place on involuntary medical leave of absence.

To recap, on September 12, 2016, I spoke to Mr. Mark Sollazzo, my Associate Director about the safety of my work environment and showed him some evidence that support my concern. It was not the first time that this safety concerns were discussed with him and he always promised to look into it. The discussion lasted about ten minute and was held in my work area.

I was never a danger to myself, other staff in my department and the hospital nor a danger to the hospital properties.

Fifteen minutes after my discussion with Mark Sollazzo, you showed up with the hospital police and asked me to park my properties and leave the hospital premises immediately. I complied.

*Notice of Objection — 11/23/16*

*Page 2*

I am therefore asking to be returned to my duty and continued to be paid my regular salary until after the PRB hearing, determination and notification is done as stipulated by the Regulation 1. Policy.

I don't have to be punished just because the corporation has the power to punish because I reported safety concerns to the hospital in a civilized proper manner. I requested an appointment and sat down quietly explaining my concerns. Mr. Sollazzo never pointed out anything wrong with our discussion.

I am looking forward to hearing from you soon.

Sincerely Yours,

Oludotun Akinde.

September 12, 2016

**NYC HEALTH+ HOSPITALS**

Office of Labor Relations
Facility: NYC Health + Hospitals/Harlem

VIA HAND DELIVERY

Oludotun Akinde
485 East Lincoln Avenue, Apt. 215
Mount Vernon, NY 10552

Dear Mr. Akinde:

In accordance with Section 6.2 and Regulation No. 1 of the NYC Health + Hospitals Personnel Rules and Regulations, effective September 12, 2016, you are hereby placed on an involuntary medical leave of absence pending the procedures in accordance with the above-stated Rules and Regulations. You may draw upon your accrued leave time, at your request. You will shortly receive a letter directing you to appear before a physician from the Personnel Review Board Panel of Physicians for an evaluation concerning your fitness to perform the duties of your title of Coordinating Manager Level B.

If you have any questions concerning this procedure, please feel free to call this office at 212-939-2615, or speak with your Union Representative, who has been apprised of the above.

Very truly yours,

[signature]

Shari M. Singleton
Labor Relations Specialist

cc:   Mark Sallazo
      Venus Williams – Local 1180
      Human Resources Department
      Payroll
      Central Office Labor Relations

[handwritten annotations: Fax Singleton. 212-939-2114; Singlets2@NYCHHC.org; Showed pictures of Harlem Hospital staff in front of my house. Also pictures of others in disguise @ showed up at Plaza unexpected. Spoke to Mr. Solazzo on 9/12/16 for safety concern. 9/12/16 Shet...]



ANDREW M. CUOMO
GOVERNOR

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

OLUDOTUN AKINDE,
                              Complainant,

v.

NEW YORK CITY HEALTH & HOSPITALS
CORPORATION,
                              Respondent.

DETERMINATION AFTER
INVESTIGATION

Case No.
10165680

Federal Charge No. 16GB400698

On 11/20/2013, Oludotun Akinde filed a verified complaint with the New York State Division of Human Rights ("Division"), charging the above-named Respondent with an unlawful discriminatory practice relating to employment because of age, disability, national origin, race/color, sex, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and that <u>PROBABLE CAUSE</u> exists to believe that the Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated: DEC 1 1 2013

Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By: _____
Julia B. Day
Regional Director