USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/13/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                       :
OLUDOTUN AKINDE,                                       :
                                                       :
                                    Plaintiff,         :         1:16-cv-8882-GHW
              -v -                                     :
                                                       :         MEMORANDUM OPINION
NEW YORK CITY HEALTH AND HOSPITAL                      :              AND ORDER
CORPORATION and SHARI SINGLETON,                      :
                                                       :
                                    Defendants.        :
---------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

   *Pro se* plaintiff Oludontun Akinde brought this case in November 2016, alleging that his

employer's decision to place him on involuntary leave in September 2016 violated his due process

rights and constituted illegal discrimination and retaliation. Defendants have moved to dismiss

Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). For the reasons discussed below,

Defendants' motion to dismiss Plaintiff's complaint is GRANTED IN PART AND DENIED IN

PART.

## I.      BACKGROUND

   Plaintiff filed his complaint in this case on November 14, 2016, naming as defendants New

York City Health and Hospitals Corporation ("NYC HHC") and Shari Singleton. Dkt. No. 2. At

the time he filed his complaint, Plaintiff was an employee of NYC HHC, staffed at Harlem Hospital

Center, but on involuntary leave. Plaintiff's complaint alleges that on September 12, 2016, he

reported to his supervisor Mark Sollazzo that he had seen three employees of Harlem Hospital

Center outside his house on two different occasions, and that he had taken pictures of those

employees. *Id.* at ¶ 2. Plaintiff was concerned because he knew that the employees did not live near

his home, which is in Westchester County. *Id.* at ¶ 3. Plaintiff believed that the employees had

visited his home to intimidate him and retaliate against him for filing a complaint against the hospital with the New York State Division of Human Rights in 2013 as well as a lawsuit in New York State Supreme Court in September 2015.[1] *Id.* at ¶¶ 4-7. Approximately thirty minutes after Plaintiff informed Mr. Sollazzo about the incidents at his home, Shari Singleton, an employee of the Labor Relations group, and a Harlem Hospital Center police officer arrived at Plaintiff's office and handed him a letter placing him on an involuntary leave of absence in accordance with NYC HHC's "Regulation 1," which is entitled "Unsatisfactory Job Performance of Permanent Employee Resulting from Medical Disabilities." *Id.* at ¶ 9, Ex. 1. Plaintiff alleges that Ms. Singleton noted on this letter that she was shown pictures of Harlem Hospital Center staff outside Plaintiff's home. *Id.* at ¶ 11, Ex. 3.

Plaintiff claims that his suspension violated various provisions of Regulation 1, including Section III.A, which states that employees may be placed on an involuntary leave of absence pending a medical examination and hearing "if the facility's Appointing Officer . . . determines that there is probable cause to believe that the continued presence of the employee on the job is a potential danger to persons or property, or would seriously interfere with operations." *Id.* at ¶¶ 9, 10, Ex. 1. He argues that his actions on September 12, 2016 did not warrant a belief that he was a danger to himself or others or that his presence at work would seriously interfere with the operations of the hospital. *Id.* at ¶ 16. On September 13, 2016, Plaintiff wrote a letter to Ms. Singleton, objecting to being placed on leave and claiming that he was not a danger to himself, other staff, or hospital properties. *Id.* at ¶ 12, Ex. 2. Plaintiff was sent to a Harlem Hospital Center appointed doctor, Dr. Rahtz, on October 19, 2016 for an evaluation. *Id.* at ¶¶ 11, 13-14. Plaintiff

---

[1] Plaintiff's later filings suggest that the September 2015 lawsuit described in his complaint is actually a case which was filed in New York State Supreme Court, New York County on April 29, 2016, under Index No. 153641/2016.

alleges that NYC HHC sent Dr. Rahtz fabricated documents that were not discussed with or shown to him before the evaluation, and that Dr. Rahtz improperly relied on that information when evaluating Plaintiff. *Id.*

Plaintiff's complaint alleges that NYC HHC's decision to place him on involuntary leave in contravention of Regulation 1 violated his right to due process and constituted illegal retaliation. *Id.* at ¶ 17. At the time he filed his complaint, Plaintiff's requested relief included that he be allowed to draw a regular salary until the Personnel Review Board determined that he should be placed on involuntary leave and that he be returned back to work. *Id.* at ¶¶ 15, 18.

On April 14, 2017, Defendants moved to dismiss Plaintiff's complaint in its entirety. Dkt. No. 11. On July 7, 2017, District Judge Katherine Forrest granted Defendants' motion to dismiss. Dkt. No. 24. Judge Forrest found that the action was moot because at the time the motion to dismiss was decided, Plaintiff had received the injunctive relief requested in his complaint—*i.e.*, a hearing before NYC HHC's Personnel Review Board. On August 15, 2017, Plaintiff filed a notice of appeal of Judge Forrest's decision. Dkt. No. 26.

On October 9, 2018, the Second Circuit vacated the district court judgment and remanded this case for further proceedings. Dkt. No. 28. The Second Circuit concluded that—although it agreed with Judge Forrest's determination that any request for injunctive relief was moot—the complaint could be read to assert a claim for monetary damages in the form of lost wages. *Id.* at 2. Accordingly, the case was remanded for consideration of a potential damages claim and was reassigned to this Court.

On November 30, 2018, Defendants again filed a motion to dismiss the complaint in its entirely. Dkt. No. 33. In his opposition to Defendants' motion to dismiss, Dkt. Nos. 39, 40, Plaintiff included a recounting of the events surrounding his involuntary leave of absence which is substantially similar to the allegations in his complaint. However, Plaintiff also included a number

of new facts in support of his due process, discrimination, and retaliation claims, including additional factual allegations regarding events which occurred before and after November 14, 2016, the date on which Plaintiff filed his original complaint. Those additional alleged facts are as follows.

On November 20, 2013, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging that NYC HHC had engaged in unlawful discriminatory practices. Dkt. No. 40, Ex. 14. On December 11, 2013, the NYSDHR found probable cause that NYC HHC had engaged in unlawful discriminatory practices when it suspended Plaintiff under Regulation 1 in January 2013, because NYC HHC had refused to consider medical evaluations provided by Plaintiff's independent physicians. *Id.* In May 2014, Plaintiff was transferred from his job in Quality Management/Risk Management to the Material Management Department. Dkt. No. 39 at 6. He claims that he was transferred as a result of his 2013 NYSDHR complaint. *Id.* He also claims that when he asked his supervisor Mark Sollazzo why he was transferred, Mr. Solazzo told him "because of your [m]ental illness and because you are a n****r." *Id.* Mr. Solazzo also told Plaintiff, "you can return to your hut in Nigeria for Americans to work." *Id.* Plaintiff states that he reported Mr. Solazzo to the Labor Relations Department orally and via email and received no response. *Id.*

On December 9, 2015, at Plaintiff's request, the NYSDHR vacated its probable cause determination in order to allow Plaintiff to pursue his case in state court. Dkt. No. 40, Ex. 15. On April 29, 2016, Plaintiff filed a case in New York State Supreme Court, asserting claims for disability discrimination, hostile work environment, and retaliation under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). *Id.*, Ex. 16.

Plaintiff claims that after he filed his case in April 2016, Defendants retaliated against him in a variety of ways. First he alleges that Mark Sollazzo repeatedly called him "crazy" and a "n****r"

and told Plaintiff to return to his "hut in Nigeria."[2] Plaintiff states that he reported this conduct to Labor Relations and the NYC HHC Office of Equal Employment Opportunity ("EEO") through his hospital-issued email account. Dkt. No. 39 at 5. Second, in May 2016, NYC HHC reinstated Plaintiff to a job requiring hard labor, even though he was medically exempted from hard labor duty in 2014. *Id.* at 9-10; Dkt. No. 40, Ex. 13. Third, a few days after he filed his New York state court lawsuit, the Director of Human Resources, Indramattie Harilall, falsely accused Plaintiff of violating HIPAA and forced him to complete HIPAA privacy training, even though Plaintiff told Ms. Harilall that he had no access to patient records and therefore could not possibly have violated HIPAA. Dkt. No. 39 at 10. Plaintiff claims that Ms. Harilall also later told him that he was not promoted to the position of Director of Ambulatory Care because of his HIPAA violation and that she could not consider him for any other positions because of his "mental illness." *Id.* He also states that on May 5, 2016, Labor Relations personnel told him to withdraw his case because he was "returned back to work." *Id.* at 2.

On September 6, 2016,[3] Plaintiff met with Nicole Phillips, the Regional Director of the EEO, and told her about the retaliation he had suffered and about his hostile work environment. *Id.* at 13. He claims that she promised him she would contact him after their meeting, but never did. *Id.*

Plaintiff was placed on involuntary leave on September 12, 2016. In his opposition papers, Plaintiff adds additional allegations supporting his argument that he should not have been suspended pursuant to Regulation 1. Plaintiff claims that Regulation 1 should not have applied to

---

[2] Although Plaintiff claims that this behavior was retaliation for his April 2016 lawsuit, he also alleges that Mr. Sollazzo repeated these slurs "more than a thousand times between May 2014 and September 2016." Dkt. No. 39 at 5-7.

[3] Plaintiff's pleadings also appear to state that he met with Ms. Phillips in August 2016. Dkt. No. 39 at 2. It is not clear to the Court whether that alleged August meeting is the same as or separate from the September 6, 2012 meeting.

him because he was qualified for his job and there was no evidence that he suffered from unsatisfactory job performance prior to September 2016. Dkt. No. 39 at 7, 20. He also notes that in the years and months leading up to his involuntary leave, several doctors concluded he was competent to work, including the doctor who examined him during his employer-mandated physical on August 18, 2016. *Id.* at 7-8, 14; Dkt. No. 40, Exs. 8-12, 22.

After Plaintiff was placed on involuntary leave, he was sent in October 2016 to be evaluated by Dr. Roger A. Rahtz, a psychiatrist approved by the NYC HHC Personnel Review Board. Dkt. No. 2 at ¶ 11; Dkt. 40, Exs. 23, 27 at 3. Dr. Rahtz concluded in a November 2016 letter that Plaintiff was medically unable to perform the essential duties of his position and recommended continuing Plaintiff's involuntary leave for one year. Dkt. 40, Ex. 27 at 3. Plaintiff contends that Dr. Rahtz erroneously reached this conclusion as the result of Defendants supplying him with "fabricated or distorted damaging information," including "pressuring damaging phone calls" placed before and after the evaluation. Dkt. No. 39 at 15. For instance, Plaintiff asserts that Defendants deliberately mischaracterized certain of his behaviors—such as putting hospital-issued plastic coverings over his desk after protracted ceiling leaks and wearing protective gear to protect himself from allergic reactions to dust and chemicals—as "abnormal behavior" resulting from his supposed paranoid belief that his coworkers were putting harmful chemicals on his belongings. *Id.* at 2, 4-5.

In November 2016, Plaintiff also visited two independent psychiatrists—Dr. Bruce Schweiger and Dr. Kingsley Nwokeji—both of whom concluded that he was psychologically fit to return to work. Dkt. No. 40, Ex. 33. On November 23, 2016, Plaintiff emailed those evaluations to Ms. Singleton asking that he be reinstated to his position, but received no response. *Id.*, Ex. 26; Dkt. No. 39 at 15.

On December 5, 2016 and January 4, 2017, a hearing regarding Plaintiff's involuntary leave was held in front of Hearing Officer Peter Korn. Dkt. No. 40, Ex. 27. According to Plaintiff, at

that hearing, Ms. Singleton admitted that she knew the individuals from Plaintiff's photograph were Harlem Hospital Center employees. Dkt. No. 40 at 23. Plaintiff also claims that the Harlem Hospital Center police officer who delivered the notice of involuntary medical leave with Ms. Singleton admitted that Plaintiff was not a threat to the hospital and that he recognized one of the individuals from Plaintiff's photograph as a Harlem Hospital Center employee. Dkt. No. 39 at 15-16. In addition, Plaintiff states that various witnesses admitted that he did not have a record of poor job performance before he was suspended in September 2016. *Id.* at 16. Finally, Plaintiff raises several issues with the evidence presented against him, including that NYC HHC offered testimony from Diones Aquino, one of the individuals Plaintiff claims came to his house to intimidate him, and that NYC HHC was allowed to rely on the testimony of Dr. Rahtz, who was not independent and who reached his conclusions based on false evidence supplied by Defendants. *Id.* at 15.

On February 23, 2017, Hearing Officer Korn recommended that the Plaintiff's appeal be denied. Dkt. No. 40, Ex. 27 at 4. Based on that recommendation, which was relayed in a letter addressed to Ms. Ebone Carrington, the CEO and COO of NYC HHC, Plaintiff claims that Hearing Officer Korn "illegally and inappropriately reached out to . . . [e]xecutives at Harlem Hospital . . . advising them not to accept [Plaintiff] back." Dkt. No. 40 at 23, Ex. 27 at 4. On February 28, 2017, Indramattie Harilall, acting as Ms. Carrington's designee, agreed with Hearing Officer Korn's findings and upheld Plaintiff's involuntary medical leave of absence. Dkt. No. 40, Ex. 27 at 4.

On September 25, 2017, the NYC HHC Personnel Review Board upheld Plaintiff's involuntary leave as of September 12, 2016. *Id.*, Ex. 27 at 4-5. On October 24, 2017, Nicole Phillips forwarded to Shari Singleton a letter from the EEO, responding to a request from Plaintiff to return to duty following his leave of absence. *Id.*, Ex. 29. Ms. Phillips' letter recommended that Plaintiff's request for an accommodation be denied because Plaintiff was not capable of performing essential

duties of his job, with or without an accommodation. *Id.* On January 25, 2018, NYC HHC sent

Plaintiff a letter notifying him that his employment would be terminated as of February 26, 2018

unless he asked for reinstatement to his position by that date. *Id.*, Ex. 32. On February 14, 2018,

Plaintiff's counsel responded to NYC HHC's letter, attaching reports from Dr. Schweiger and Dr.

Nwokeji. *Id.*, Ex. 33; Dkt. No. 39 at 18-19.

## II.  LEGAL STANDARD

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all

uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the

party asserting jurisdiction. But where jurisdictional facts are placed in dispute, the court has the

power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as

affidavits. In that case, the party asserting subject matter jurisdiction has the burden of proving by a

preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752

F.3d 239, 243 (2d Cir. 2014) (quotations omitted); *see also Makarova v. United States*, 201 F.3d 110, 113

(2d Cir. 2000).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint

must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com,*

*Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009). "First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572

F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (alterations omitted). Second, a court

determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to

an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556

U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because Plaintiff is proceeding *pro se*, the Court must liberally construe his allegations and "interpret[] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quotations omitted)). Furthermore, the Court may consider new facts raised in a *pro se* litigant's opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Brooks v. Jackson*, No. 11 Civ. 6627 (JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint."). Nevertheless, "dismissal of a *pro se* complaint is . . . appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## III.    DISCUSSION

### a.  Plaintiff's complaint states a claim under 42 U.S.C. § 1983 for violation of his procedural due process rights.

Plaintiff asserts in his complaint that his suspension pursuant to Regulation 1 violated due process. Dkt. No. 2 at ¶¶ 1, 12, 15, 17-18. The Court therefore interprets Plaintiff's complaint as

raising a claim pursuant to 42 U.S.C. § 1983 for violation of his Fourteenth Amendment procedural due process rights.

The Fourteenth Amendment's Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The Due Process Clause thus "bars arbitrary, wrongful government actions, and guarantees procedural fairness when a state action deprives a citizen of a protected interest in life, liberty, or property." *Wiesner v. Rosenberger*, No. 98 Civ. 1512 (HB), 1998 WL 695927, at *3 (S.D.N.Y. Oct. 6, 1998) (citing *Daniels v. Williams*, 474 U.S. 327, 330-32 (1986)). "The fundamental requirement of the Due Process Clause is that an individual be given the opportunity to be heard at 'a meaningful time and in a meaningful manner.'" *Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)). "To plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013) (quotations omitted). "The appropriate process depends on the balancing of three factors: (1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used;' and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "[T]he ultimate conclusion about procedural adequacy . . . turns on the full set of pre- and post-deprivation procedures available." *O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005). Where post-deprivation process is concededly adequate, a plaintiff must demonstrate that the "pre-deprivation process was so inadequate that it violated the Constitution." *Id.* at 198.

Based on documents attached to Plaintiff's opposition papers which suggest that Plaintiff was a member of a public employees union, *e.g.*, Dkt. No. 40, Ex. 23, the Court finds that, for purposes of surviving a motion to dismiss, Plaintiff has sufficiently pled that his involuntary suspension on September 12, 2016 infringed his protected property interest in his employment. *See Monroe v. Schenectady Cty.*, 1 F. Supp. 2d 168, 171 (N.D.N.Y. 1997), *aff'd sub nom. Monroe v. Cty. of Schnectady*, 152 F.3d 919 (2d Cir. 1998) ("[I]t is well-established that a property interest arises where a collective bargaining agreement between a public employer and a union protects union members from termination without just cause."). The remaining issue, therefore, is whether that deprivation was effected without due process.

Plaintiff's complaint and opposition to Defendants' motion to dismiss raise four categories of objections regarding the process he received. First, Plaintiff asserts that the witnesses at the hearing on his involuntary leave acted improperly—including, for instance, by lying during their testimony. Second, he claims that the hearing itself was not fair or neutral, largely because the witnesses who testified on behalf of NYC HHC and the hearing officer were biased. Third, he appears to assert that he did not receive sufficient pre-deprivation process, because the decision to place him on involuntary leave occurred prior to any formal hearing, review, or opportunity to be heard. Fourth, he challenges NYC HHC's determination that there was in fact probable cause to believe his continued presence in the workplace was a potential danger to persons or property, such that he could be placed on immediate involuntary leave pursuant to Section III.A of Regulation 1.

Plaintiff's first and second categories of objections challenge the adequacy of the post-deprivation process he received. With respect to these objections, it is clear that any complaints Plaintiff may have regarding the NYC HHC Personnel Review Board hearing he received could have been raised in an Article 78 proceeding in New York state court. *See Locurto v. Safir*, 264 F.3d 154, 174-75 (2d Cir. 2001) ("Petitioners proceeding under Article 78 may raise claims that the agency

adjudicator was biased and prejudged the outcome . . . or that *ex parte* communications with other officials may have infected the adjudicator's ruling."); *see also Griffin v. City of New York*, No. 15-cv-9926 (LAP), 2016 WL 10570968, at *3 (S.D.N.Y. Dec. 14, 2016) ("To the extent that Plaintiff challenges the veracity of the documents that the defendants submitted during the administrative proceeding that ultimately resulted in the end of Plaintiff's public employment, New York State law provides a remedy—an Article 78 proceeding."). Indeed, as the Personnel Review Board noted in its final decision upholding Plaintiff's involuntary leave, its determination was subject to review "in accordance with Article 78 of the civil practice law and rules (CPLR)." Dkt. No. 40, Ex. 27 at 5. Because Plaintiff could have raised his objections to the NYC HHC Personnel Review Board hearing in an Article 78 proceeding, Plaintiff was afforded all the post-deprivation process that was due to him. *See Locurto*, 264 F.3d at 175 ("An Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes.").

Plaintiff's fourth set of objections—which challenge NYC HHC's factual determination that he was a danger to himself or others or that his presence in the workplace would seriously interfere with operations—similarly do not state a claim for a violation of due process. To the extent that Plaintiff objects not to the adequacy of the process he received, but to the substantive outcome of that process, his challenge to agency decision-making should have been raised in an Article 78 proceeding. *See* C.P.L.R. § 7803 (Article 78 proceeding includes review based on claims that an agency decision was "arbitrary and capricious," "an abuse of discretion," or not "supported by substantial evidence."). Such a claim may not be brought in federal court, and therefore must be dismissed. *See Cartagena v. City of New York*, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003) ("State law does not permit Article 78 proceedings to be brought in federal court, and hence [federal courts] do not have the power to exercise supplemental jurisdiction over . . . Article 78 claims."); *see also Blatch v. Hernandez*, 360 F. Supp. 2d 595, 637 (S.D.N.Y. 2005) (Article 78 claim "must be dismissed for lack

of subject matter jurisdiction, as New York State has not empowered the federal courts to consider such claims.").

However, Plaintiff's third set of objections—which essentially raise a challenge to the adequacy of the pre-deprivation process afforded to him—present a more difficult question. In *Gilbert v. Homar*, the Supreme Court considered the issue of the pre-deprivation process due to a tenured public employee who was summarily suspended without pay after being arrested and charged with drug-related crimes. 520 U.S. 924 (1997). In analyzing the *Mathews* factors, the Court in *Gilbert* concluded that the suspended employee was not entitled to any pre-deprivation process for several reasons. *Id.* at 931-35. The Court noted that the deprivation of property the employee suffered was merely a temporary period without pay prior to a post-suspension hearing, and thus a far less substantial interest than the complete loss of employment occasioned by a final termination. *Id.* at 932. Further, the Court found that the government had a significant interest in immediately suspending an employee facing felony charges, in part due to its interest in preserving public confidence in the integrity of its institutions. *Id.* at 932-33. Therefore, the critical piece of the Court's analysis was its determination that the risk of an erroneous deprivation in such situations was low, as the employee's arrest based on probable cause meant that there had already been an independent third-party determination of the reasonable grounds supporting the suspension without pay. *Id.* at 933-34. Accordingly, in light of the admittedly sufficient post-deprivation process which was provided to the employee in the form of a hearing, the Court concluded that the failure to provide the suspended employee with any pre-deprivation process was not a violation of the Fifth and Fourteenth Amendments. *Id.* at 931-35.

Just as in *Gilbert*, Plaintiff's property interest—while significant—is merely the interest in not being suspended without pay pending a hearing. On the other hand, courts have long recognized that the government maintains a significant interest in protecting public health and safety. *See, e.g.*,

13

*Mackey v. Montrym*, 443 U.S. 1, 17 (1979). The main divergence between this case and *Gilbert*, therefore, is the fact that Regulation 1 imbues a sole NYC HCC official—rather than a neutral third-party—with the responsibility for making the probable cause determination regarding the danger or potential for disruption presented by an employee, arguably heightening the risk of an erroneous deprivation. At this stage of the proceedings, the Court cannot conclude that the risk of an erroneous deprivation resulting from these procedures is insignificant. Plaintiff has claimed he was suspended pursuant to Regulation 1 even though he had no history of poor work performance, several doctors had repeatedly certified he was fit to work, nothing about his behavior on September 12, 2016 would have suggested he was a danger to himself or others, various hospital personnel later admitted he was not a danger to himself or others, and Ms. Singleton herself acknowledged that Plaintiff showed her a picture of Harlem Hospital Center employees outside his home. While these factual allegations do not directly relate to the process by which NYC HHC determined that Plaintiff was a danger to himself or others or was potentially disruptive to hospital operations, they raise sufficient concerns about the accuracy of that process to pose a serious question about the risk of an erroneous deprivation. Thus, while the Court does not foreclose the possibility that Defendants may, after proceeding through discovery, produce sufficient evidence to demonstrate the constitutional sufficiency of the Regulation 1 procedure through a summary judgment motion, Defendants are not entitled to dismissal of Plaintiff's procedural due process claim at this stage of the litigation.[4]

---

[4] Defendants also argue that Defendant Singleton should be dismissed from this case because she is entitled to qualified and absolute immunity for her role in Plaintiff's alleged constitutional deprivation. "A government official 'is entitled to qualified immunity if his actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known" or "if it was objectively reasonable" for the public official to believe that his actions were lawful at the time of the challenged act.'" *Tolliver v. Ercole*, No. 08-cv-4023 (DAB), 2010 WL 1222053, at *3 (S.D.N.Y. Mar. 29, 2010) (quoting *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 191 (2d Cir. 2006)). Absolute immunity, on the other hand, "is accorded to judges and prosecutors functioning in their individual capacities and, under certain circumstances, is also extended to officials of government agencies 'performing certain functions analogous to those of a

### b. Plaintiff's complaint states a claim against NYC HHC for violations of Title VII and the Americans with Disabilities Act.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII's antiretaliation provision prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. § 2000e-3(a). Title I of the Americans with Disabilities Act ("the ADA") contains parallel provisions to Title VII's antidiscrimination and antiretaliation provisions, offering similar protections to individuals who have a "physical or mental impairment that substantially limits one or more major life activities, . . . a record of such an impairment, or . . . [who are] regarded as having such an impairment." 42 U.S.C. §§ 12102, 12112. Construed liberally, Plaintiff's complaint can be read to assert claims for race and disability discrimination and retaliation under both Title VII and the ADA.

As an initial matter, however, to the extent that Plaintiff attempts to assert claims against Ms. Singleton for discrimination or retaliation under Title VII and the ADA, those claims are dismissed. Title VII does not provide for individual liability. *See, e.g.*, *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 365 (N.D.N.Y. 2015) ("It is well established that 'employers, not individuals, are liable under

---

prosecutor' or judge." *Bohmer v. New York*, 684 F. Supp. 2d 357, 362 (S.D.N.Y. 2010) (quoting *Butz v. Economou*, 438 U.S. 478, 511-12 (1978)). "In deciding whether an official's conduct in an administrative proceeding should be accorded absolute immunity, the Court employs a 'functional approach' to determine whether the procedures used by the agency are sufficiently similar to the judicial process to warrant a grant of immunity, and then look to whether the actions taken by the official are 'functionally comparable' to that of a judge or prosecutor." *Id.* at 362-63 (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 201-02 (1985) and *Butz*, 438 U.S. at 513). At this stage of the proceeding—with essentially no record on which to base any evaluation of the pre-deprivation process Plaintiff received—the Court cannot conclude that Ms. Singleton's actions were "objectively reasonable" or were so similar to the prosecutorial function that she is entitled to the protections of qualified or absolute immunity. *See Tolliver*, 2010 WL 1222053, at *3 ("Further, while 'a qualified immunity defense can be presented in a Rule 12(b)(6) motion . . . the defense faces a formidable hurdle when advanced on such a motion and is usually not successful." (quoting *Field Day*, 463 F.3d at 192)).

Title VII.'" (quoting *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012))). Similarly, individual

defendants cannot be held liable under the retaliation provisions of the ADA. *Spiegel v. Schulmann*,

604 F.3d 72, 79-80 (2d Cir. 2010). Although the Second Circuit has not specifically addressed the

issue of whether individuals can be held liable under other provisions of the ADA, many district

courts in this Circuit have determined that the ADA's other provisions likewise do not provide for

individual liability. *See Ivanov v. New York City Transit Auth.*, No. 13-cv-4280 (PKC), 2014 WL

2600230, at *5 (S.D.N.Y. June 5, 2014) ("Because an individual is not an 'employer' under Title VII,

an individual is also not an 'employer' under the ADA and, therefore, may not be liable for disability

discrimination."); *see also, e.g.*, *Milner v. HRA Police Dep't/Agency*, No. 15-cv-6320 (VSB), 2018 WL

1583675, at *5 (S.D.N.Y. Mar. 28, 2018); *Garvey v. Town of Clarkstown, New York*, No. 13-cv-8305

(KBF), 2018 WL 1026379, at *8 (S.D.N.Y. Feb. 22, 2018), *aff'd sub nom. Garvey v. Sullivan*, 773 F.

App'x 634 (2d Cir. 2019); *Garcia v. Kings Cty. Hosp. Ctr.*, No. 16 CIV. 3151 (ER), 2018 WL 389212, at

*3 (S.D.N.Y. Jan. 11, 2018). Furthermore, Plaintiff is denied leave to replead his Title VII and

ADA claims against Ms. Singleton because the Court concludes that any further attempt to plead

those claims against an individual would be futile. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,

106 F.3d 11, 18 (2d Cir. 1997).

However, Plaintiff's complaint does state claims against NYC HHC for discrimination and

retaliation in violation of Title VII and the ADA. "To establish a *prima facie* case [of employment

discrimination under Title VII and the ADA], a plaintiff must show that: (1) she was a member of a

protected class; (2) she was competent to perform the job in question, or was performing the job

duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action

occurred under circumstances that give rise to an inference of discrimination." *Henderson v. Physician

Affiliate Grp. of New York P.C.*, No. 18-cv-3430 (JMF), 2019 WL 3778504, at *4 (S.D.N.Y. Aug. 12,

2019). "At the pleadings stage, then, a plaintiff must allege that the employer took adverse action

against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). To plausibly allege a Title VII or ADA retaliation claim, "a plaintiff must plead facts to show that: (1) he was engaged in an activity protected [under the statute] . . . ; (2) defendants were aware of his participation in the protected activity; (3) defendants took adverse action against him; and (4) a causal connection existed between the protected activity and the adverse action." *Jeanty v. Newburgh Beacon Bus Corp.*, No. 17-cv-9175 (CS), 2018 WL 6047832, at *9 (S.D.N.Y. Nov. 19, 2018) (quotations omitted).

Here, the Plaintiff has pleaded that he is an African American man who was perceived by his employer as suffering from various mental health issues. Plaintiff alleges that he was qualified for his job, both because of his credentials and because numerous doctors had cleared him to work in the years and months preceding the imposition of involuntary leave. He claims that his direct supervisor—who was involved in the incident that led to the imposition of Plaintiff's involuntary leave—referred to him using various slurs "over a thousand times" during the two-and-a-half years preceding the imposition of Plaintiff's involuntary leave, reflecting animus towards both his race and his perceived disability. He also claims that he was specifically told by Human Resources personnel that he would not be considered for any other positions because of his mental disability. And Plaintiff alleges that a mere six days after he met with the Regional Director of the NYC HHC Office of Equal Employment Opportunity to inform her of the discrimination and retaliation he had suffered as a result of his race and perceived disability, he was placed on involuntary medical leave. These allegations are clearly sufficient to meet Plaintiff's "minimal burden to show discriminatory intent" in order to state a claim for race and perceived disability discrimination and retaliation. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

Defendant NYC HHC's arguments as to why Plaintiff's federal discrimination and retaliation claims should be dismissed are unavailing. First, Defendant argues that Plaintiff's claims are precluded by the New York Supreme Court's decision to dismiss his April 2016 state court action. But the core of Plaintiff's complaint here is that he was discriminated and retaliated against as a result of his decision to *file* that action. It is therefore not at all clear to the Court how the dismissal of the April 2016 action has any bearing on the claims at issue in this case, which are based entirely on events which took place after that action was filed. Defendant also claims that any discrimination or retaliation claims must be dismissed because Plaintiff has not filed an administrative charge with the United States Equal Employment Opportunity Commission regarding the events underlying this lawsuit. But an employee is not required to plead that his claims of discrimination and retaliation have been administratively exhausted with the Equal Employment Opportunity Commission in order to state a claim. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486 (2d Cir. 2018). Regardless of the ultimate merits of Defendant's administrative exhaustion argument, it is not a basis upon which the Court may dismiss Plaintiff's Title VII and ADA claims. Finally, Defendant argues that "[n]othing in the Complaint indicates that HHC had any reason to know of such harassment, and liability cannot be imputed to an employer on [these] facts," citing *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). Dkt. No. 41 at 10. But *Feingold* related to circumstances in which the alleged discrimination was perpetrated by the plaintiff's co-workers, thus requiring the plaintiff to demonstrate that his "employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Feingold*, 366 F.3d at 152 (quotations omitted). Here, Plaintiff need not plead additional facts to show that his employer was aware of the discrimination and retaliation he suffered because his claim is that such discrimination and retaliation were perpetrated *by his direct manager*. Accordingly, Defendant NYC HHC's motion to dismiss Plaintiff's Title VII and ADA claims is denied.

### c. Plaintiff's complaint fails to state a claim for discrimination under 42 U.S.C. § 1981 or for violation of his equal protection rights under 42 U.S.C. § 1983.

Plaintiff's complaint can also be read to assert claims under 42 U.S.C. § 1981—which prohibits intentional racial discrimination in the making and enforcement of contracts—and under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment equal protection rights. However, for the reasons discussed below, Plaintiff has failed to plead viable claims against either of the defendants for discrimination under § 1981 or denial of equal protection under § 1983.

First, Plaintiff's complaint does not state a claim against Ms. Singleton pursuant to § 1981 or § 1983 because there are no allegations in the complaint which support an inference that Ms. Singleton engaged in intentional discrimination. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional."). The only allegations in Plaintiff's complaint and opposition papers which even reference Ms. Singleton are that Ms. Singleton was the person who delivered the notice of involuntary leave to Plaintiff and that Ms. Singleton allegedly acknowledged that the individuals in Plaintiff's photograph were Harlem Hospital Center employees. Neither of these allegations suggests in any way that Ms. Singleton engaged in intentional discrimination. Plaintiff's § 1981 and § 1983 equal protection claims against Ms. Singleton are therefore dismissed. To the extent that Plaintiff can allege facts which would support an inference of a discriminatory animus on the part of Ms. Singleton, Plaintiff is granted leave to replead these claims.

Plaintiff has also failed to plead viable § 1981 or § 1983 claims against NYC HHC. Under the principles articulated in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "[w]hen a defendant sued for discrimination under §§ 1981 or 1983 is a municipality, 'the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.'"

*Littlejohn*, 795 F.3d at 314-15 (quoting *Patterson*, 375 F.3d at 226). "[NYC HHC] is 'a public benefit corporation created to provide health and medical services to New York City residents pursuant to [the] New York City Health and Hospitals Corporation Act." *Dames v. Pigott*, No. 18-cv-8352 (VSB), 2019 WL 4014102, at *5 (S.D.N.Y. Aug. 26, 2019) (quoting *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 (S.D.N.Y. 1993)). It "therefore qualifies as a 'municipal corporation,' whose liability under § 1983 is governed by the principles set forth in *Monell*." *Id.*

Plaintiff has not alleged any facts that the discrimination and retaliation he claims to have suffered occurred pursuant to a municipal policy or custom. Any claims he brings against NYC HHC under § 1981 or § 1983 are therefore dismissed. However, if Plaintiff can allege the existence of a municipal policy or custom, he is granted leave to replead these claims.

### d. Plaintiff's NYSHRL and NYCHRL claims are barred by the election of remedies doctrine.

Defendants have also moved under Fed. R. Civ. P. 12(b)(1) to dismiss Plaintiff's claims for discrimination and retaliation under the NYSHRL and NYCHRL on the ground that those claims are barred by the election of remedies doctrine. The Court agrees with Defendants that Plaintiff's decision to file a claim with the New York State Division of Human Rights on May 16, 2018, *see* Dkt. No. 35, Ex. 8, now bars him from pursuing claims here under the NYSHRL and NYCHRL.

The NYSHRL contains an election of remedies provision, which provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages, . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . ." N.Y. Exec. Law § 297(9). The NYCHRL contains a nearly identical provision. N.Y.C. Code § 8-502(a); *see also Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 187-89 (S.D.N.Y. 2011). "The election-of-remedies requirement is jurisdictional: once a plaintiff files a complaint with the SDHR, federal and state courts are

without subject matter jurisdiction to hear NYSHRL claims based on the same underlying conduct that gives rise to the SDHR complaint." *Yajaira Bezares C. v. The Donna Karan Co. Store LLC*, No. 13-cv-8560 (JGK), 2014 WL 2134600, at *4 (S.D.N.Y. May 22, 2014).

Plaintiff's May 16, 2018 NYSDHR complaint includes allegations regarding Plaintiff's September 2016 suspension that are nearly identical to the allegations in Plaintiff's complaint and opposition papers in this case. For instance, Plaintiff represented to the NYSDHR that in September 2016, his manager reported to hospital police that Plaintiff was exhibiting unusual behavior. Dkt. No. 35, Ex. 8. Plaintiff also repeated to the NYSDHR the same allegations that he made in this case regarding the Harlem Hospital Center employees who appeared at his house and how he was placed on involuntary leave after he reported their threats to him. *Id.* He also renewed his argument regarding the biases of the individuals who reviewed his appeal of the involuntary leave decision, pointing to the same claimed defects in the NYC HHC Personnel Review Board hearing that he raised in this case. *Id.* Plaintiff's complaint to the NYSDHR was therefore clearly based on "the same operative events" as the complaint in this case, thus preventing him from bringing NYSHRL and NYCHRL claims based on those facts. *Chakraborty v. Soto*, No. 16-cv-9128 (KPF), 2017 WL 5157616, at *8 (S.D.N.Y. Nov. 6, 2017). Nor does Plaintiff's decision to include Ms. Singleton as an additional defendant in this case save his NYSHRL and NYCHRL claims from dismissal on election of remedies grounds. *Id.* ("[P]laintiff [cannot] evade the derivative bar by suing a defendant who was not named in his NYSDHR or NYCCHR proceeding."). The Court therefore concludes that it does not have subject matter jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. Those claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiff's due process claim under 42 U.S.C. § 1983 is denied. Plaintiff's Title VII and ADA claims against Ms. Singleton are

dismissed with prejudice.  Plaintiff is denied leave to replead these claims.  Defendants' motion to dismiss Plaintiff's Title VII and ADA claims against NYC HHC is denied.  Plaintiff's claims for discrimination under 42 U.S.C. § 1981 and for violation of his equal protection rights under 42 U.S.C. § 1983 are dismissed with leave to replead.  Plaintiff's NYSHRL and NYCHRL claims are dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Any amended complaint must be filed no later than 30 days after the date of this order.

The Court requests that counsel for Defendants mail a copy of this order to Plaintiff and provide Plaintiff with copies of any unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 33.

SO ORDERED.

Dated: September 13, 2019
       New York, New York

_____
GREGORY H. WOODS
United States District Judge