Oludotun Akinde V New York City Health and Hospital Corporation
16 CV 08882

485 East Lincoln Avenue
Apartment 216
Mount Vernon, NY 10552
September 18, 2019

The Honorable Judge Gregory H. Woods
The US Court, Southern District of New York.
500 Pearl Street
New York, NY 10007

Oludotun Akinde
Plaintiff Prose

Against

New York City Health and Hospitals Corporation
Defendant.

Attorney: Cassandra N. Branch

100 Church Street, Room 2-176

New York, NY 10007-2601

(212) 356-4074.


Sir,
Hon. Gregory H. Woods
16 Civ 08882.

AMMENDED COMPLAINT AS ORDERED ON SEPTEMBER 13, 2019.
SYNOPSIS: Guide me o thy great redeemer, pilgrim through this barren land. I am weak but though art mighty, hold me with thy powerful hand. Bread of heaven. Feed me now and ever more. Open now the crystal fountain mountain whence the healing streams do flow. Let the fiery cloudy pillar lead me all my journey through strong deliverer. Be though still my strength and shield. Unemployed with no pay and benefits for more than three years now because of retaliation and sustained by my hope in our American Justice system.

My name is Oludotun Akinde and I am the plaintiff prose in this case. I was employed by the defendant in July 2005 as temp (Ad hock) Coordinating Manager B. I was employed to review, implement and monitor performance improvement of the hospital in

1

preparation for the Joint commission (JCAHO) performance Inspection survey of the hospital for January 2006.

I was assigned to the Hemodialysis units, the adult Surgical Intensive care Unit and the adult medical Intensive care units to be monitored. All my units were adjudged as the best and passed the JCAHO Survey of January 2006.
I was therefore meritoriously promoted to permanent Coordinating manager B in February 2006.

I was giving more difficult and responsible assignment upon being made permanent. I was assigned to represent Harlem Hospital Medical Center at the Health and Hospitald Corp head office in Water Street, downtown for formulation and introduction of Medication Reconciliation into the NYCHHC Corporation city-wide system.
I introduced medication reconciliation program into Harlem hospital. This improves the safety of our patient whose medication they were taking chronically ay home before admission was not taking into consideration upon admission for acute care resulting in unexplained death and injury during hospital stay. Medication reconciliation takes into account all medications including self prescribed that patient were taking at home before admission. The medically needed medications were continued during admissions while the not needed were discontinued. This program improved the safety of our patients during admissions.

I was chosen as a member of the hospital-wide performance improvement team, a three man member of the Harlem Hospital Chief executive Performance inspection team with Dr Palmer, MS. Beverage and I visiting units to review why they were not doing well. I worked on improving mammography reports on time to patients and timely reporting went up from ten percent to above seventy percent in a three months.

In 2009, the Harlem Hospital Chief Executive Office, Dr Palmar, retired and the director of Quality Management, MS Beverage was transferred to another hospital. A new Director, Mr. James Acero replaced MS. Beverage. A position of the Assistant Director for Risk Management was advertised and I applied. Unfortunately Mr. Acero was questioning why Dr Palmer and Ms. Beverage did not advertise the position and employed me. He therefore employed a temp he just hired for the position. December 2009, James Acero called me and said he was transferring me to Risk management to guide his new Assistant director. He also threatened to show me how "Niggars" are treated in his native South American Country of Peru if I don't cooperate. By the way James Acero is a white male.
James Acero then started changing my performance evaluation to justify why he did not give me the position of the Assistant director. I reported to the Human Resources and the Union with no solution.
In 2011, I therefore reported the abusive and hostile work environment to the office of the Mayor of New York city, Mr. Bloomberg. The Mayor personally called me and told me to report to the New York State Division of Human Rights or the EEOC. He also called Harlem Hospital to stop their abusive practices.

Once I made the report to the Mayor of New York City, the defendant, New York City Health and Hospital Corporation retaliated by invoking Regulation 1 policy as smoke screen for putting me on involuntary medical leave of absence without pay from March 2011 to October 2011. In 2011, they used my altered performance report to justify my suspension based on perceive mental illness.

**(NOTE) EXHIBITS** #: For all exhibits please refer to the exhibits submitted on 12/23/18 for Plaintiff opposition to defendant motion to dismiss.

Using their Regulation 1 policy as retaliation each time I report the defendant to any regulatory agency became their MO and norm since 2011.

**Plaintiff Exhibit 12** submitted on 12/23/19: Below is part and continuation of plaintiff exhibit 12 submitted on 12/23/18. Titled Event history.

Here is Mr. William Marshal, the former NYCHHC EEOC Officer at Harlem Hospital confirming to the NYSDHR Human rights Specialist MS. Jami Kaplan that I was suspended in March 2011 because I reported the defendant creating hostile work environment for me to Mayor Bloomberg of New York City Office and not because of poor job performance resulting from medical illness AKA Regulation 1 Policy.. Please read, Titled Event History with Comment dated: 11/20/2013. This is the beginning of the defendant using Regulation 1 as Retaliation and their Modulus operandi for Retaliations. I was placed on involuntary medical leave of absence without pay from March 2011 to October 2011 in retaliation for reporting them to the Mayor's office. See the ** ** for Mr. William Marshal statement below in his own word. Mr. Williams even described me as dangerous for reporting the defendant to the Mayors office.

**PLAINTIFF EXHIBIT 12 CONTINUED**: This is part of this exhibit 12 I submitted earlier on 12/23/18. These is an unedited interview of Jami Kaplan titled EVENT HISTORY WITH DEFENDANT EEOC PERSONEL WILLIAM MARSHAL.
NYS DHR
"EVENT HISTORY WithH COMMENTS from MS. Jami Kaplan of the NYSDHR.

Name: Oludotun Akinde v New York City Health & Hospitals Corporation
Complaint ID HRS 10165680 13-E-ADRSON-E Date Filed 11/20/2013 Investigating Office Rochester Jami Kaplan
Events
Unit: Type: Sub Type: Date: Status: Date Completed: Comments:
Unit: Type: Sub Type:
Report run on 12/10/2013
Regional Respondent Contact Telephone Thu 11/7/2013 Completed 11/7/2013 During the inl.<lstigation of C's prior case (#10159314), the following was discussed with R (it should be noted that R was advised that information obtained during the prior case in1.estigation would be used in this case as well):

3

I spoke to William Marshall, Respondent's contact person for this complaint, on Nov. 7, 2013. Mr. Marshall conftnmed that they sent a response and he sent a copy to me lia email as we were speaking.

**Mr. Marshall stated that the first time Mr. Akinde was out on Reg 1, was after he sent a 6 page letter to Mayor Bloomberg on 2/28/2011. He said that this letter initiated the first suspension. He said that Mr Akinde seemed dangerous and exhibited questionable or hanmful behalior, so he was placed on invOluntary leave'" under Reg 1.6** He said that Reg 1 is used in these situations and the individual is not tenminated but rather, is sent on lea'" to seek care to address the behavior. He stated that Mr. Akinde was cleared by a psychologist and was returned to work. He stated that el.<lrything was fine for awhile, but then in January of 2013, Mr. Akinde started saying he was approached in the parking lot by men claiming to be from the Inspector general office asking him to drop his December 28, 2012 report to the NYSDHR or be fired. He was placed again on involuntary leave of absence without pay and is still employed. He stated that Mr Akinde appealed the decision, and although he claimed to the Dilision that he was not gil.<ln a hearing, he attended the hearing.

Mr. Marshall stated that Mr. Akinde had a great record and then something happened, because Mr. Akinde has not been acting like himself. He stated that the psychologist feels that Mr. Akinde has no paranoid disorder, but there has been no actual diagnosis, so he does not know if Mr. Akinde has a disability or not. Regional Complaint Filed By: jkaplan Page 1
A000058

Mr. Akinde stated that in December of 2009, he had to work under the supervision of the person who received the promotion. He said that the Head of Quality Management, a White male, told him at that time that it would be difficult for him to work there and used the "n" word. He said that is where the race allegation came in. In response to my query as to whether this indi~dual was in"°lwd in his suspension, he said that he does not know if he was directly in"°lwd, but he was the head of the department.

Regarding the incident alleged in December of 2012, Mr. Akinde stated that he was not invited to a Christmas party. He said that an Assistant Director told him that Emily Peters removed his name because of his 2011 perceived medical evaluation. He stated that Ms. Peters is an Associate Executive Director. He said that he sent an email to Ms. Peters about this event and told her that he had not been in~ted and she said "people think you are crazy." He said that he told her that he would report this to the Di~sion of Human Rights, which led to his December 28, 2012 claim with our agency. He said that she also told him not to push his luck and this is where gender comes in because she is female. He stated that she apologized and promised to correct the mistake of lea~ng him off the email, but she did not do that. He said that he was told by colleagues that the time had changed and he was not aware of that, so he missed the party.

Mr. Akinde then described the January of 2013 incident with the two people who claims to work for NYCHHC Inspector General office that led to his most recent suspension. He said that they came to him in the parking lot and he was scared; he said that as a result, he put the hospital police on notice. He said that Ms. Peters called him that day and told him that the email he sent to the hospital police is suspicious. He said that he was told by Ms. Peters on January 15, 2013 to go to the Labor Relations department to get a letter, which

he did. He said that he was then ordered to leave work because of his January 9, 2013 email.

Mr. Akinde stated that he bought a tape recorder so he could record the people in the parking lot. He said that he had it with him on January 9, 2013, but they did not approach him that day. He stated that Ms. Peters started all of this and she is female.

We discussed his response to Respondent's conference report and he was ad~sed that his documentation that he supplied pre~ously would be used for this case. Mr. Akinde stated that the only reason they in"°ked Regulation 1 was because he sent the Jetter to the Mayor in 2011 and then complained to the Di~sion of Human Rights in December of 2012. He stated that they use Regulation 1 every time he reports them to an outside agency. He said that he believes that his January of 2013 suspension was a direct result of his December of 2012 DHR complaint.

Regional Complainant Contact E-mail Tue 1211012013 Completed 1211012013 The response was sent to Complainant today. He was ad~sed no additional documentation was required. Regional Complainant Contact

By: jkaplan Page 4

DECEMBER 2012: After resuming duty in October 2011 from the March 2011 involuntary suspension. I was ostracized by colleagues and management at work. December 2012, I contributed money for the annual staff Christmas party at work but was not allowed to participate and attend. When I asked why, I was told by the senior executive director that I was not allowed because of "your mental illness". I felt discriminated against based on perceived mental illness. On December 28, 2012, I reported the defendant discrimination to the New York State Division of Human Rights. In January 2013, I was approached at the hospital parking lot by two people who told me that they work for the Defendant Inspector general Office. They showed me a copy of notification paper they received from the NYSDHR about my December 28, 2012 filing. They said they know all my movement and monitors me where ever I am. They then threaten to fire me if I don't go drop the charges I filed against the defendant with the NYSDHR. I reported to the hospital police for safety issues and Hospital police Captain Boylan gave me an appointment to see him. I called Boylan on the appointment day and he was not there so I sent him an email explaining what the two strangers at the parking lot told me. Boylan asked me for "Sound bite" if I recorded the conversation and I said no.

My report of the parking lot incident was mischaracterized and Boylan said no employee that report Harlem hospital goes free.

I was called into the office of Labor Relations by MS. Vasquez and suspended and placed on involuntary medical leave of absence from January 15, 2013 without investigation to April 2014 and without salary using Regulation 1 policy as retaliation. Regulation 1 policy is used as retaliation each time I report the defendant to any regulatory agency.

16 CV 08882:

**Plaintiff Exhibit 5:** Refer to 12/23/18 submission:
I resumed work on April 2014 and was sent to the Central Store in the material Management to work When I asked why I was told by the Central Store director Mark



5

Sollazzo that because of " Your Mental Illness" so you can speak to the supplies. I reported Sollazzo to human resources and labor Relation but no one gets back to me after promising to.

**PLAITIFF EXHIBIT #: 12B**. Please refer to submission of 12/23/18.
**December 9, 2015:** The NYDHR granted me an election of remedies provision, which provides that "[a]ny person
Claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any
Court of appropriate jurisdiction for damages, so I can file charges in a court against New York Health and hospital Corporation. A copy was also sent to the defendant who called me upon receipt to advise my lawyers to withdraw the annulment otherwise I will be fired. I said I don't control the lawyers.

**Plaintiff Exhibit #13:** Please refer to the submission of 12/23/18. Index case number 153641/2016 of April 29, 2016.
April 29, 2016: My lawyers filed a law suit at the New York State Supreme court against the defendant. The defendant immediately retaliated by changing my job duty assignment from not involved in manual labor to being involved in manual labor and transporting supplies from the central store to hospital unit floor to clinic floors. In May 2016 I was falsely accused of violating Hipaa rule of patient confidentiality in May 2016. Also falsely accused me of not doing my hospital required physical examination and suspended me for it on 8/18/2016.

**Plaintiff Exhibit 1**: Defendant appendix A. Please refer to the submission of 12/23/18.
Defendant Appendix A: Defendant mischaracterization and mispresentation of my authorized official protected activities to their psychiatrist.
There were protracted leak of the Central Store ceiling from June 2016 resulting in damages to properties and supplies. The defendant Harlem hospital issued me with plastic coverings to cover the computers, the computer monitors, the desks, the printers and the supplies in the central Store. I was also issued with gloves; face masks and apron like all other Central Store staff to protect myself from allergies resulting from the dust mites in the store. All these are documented in the defendant exhibit appendix A. The defendant took pictured of all these my authorized protected activities documented in their appendix A, mischaracterized it and mispresented them to their psychiatrist as evidence of my crazy behaviors.

**PLAINTIFF EXHIBIT # 20: Please refer to the submission of 12/23/18.**
 COPY OF REGULATION I POLICY: Please refer to the submission of 12/23/18.

This case 16 CV 08882 was a clear case of Retaliation and not Regulation I Policy. Regulation I policy is clearly for employee with poor job performance resulting from medical illness.

There is no documented evidence of poor job performance by me since 2014 when I resumed in the material department. There is also no documented evidence of medical

6

illness by me. Both were necessary for regulation 1 policy to be truly invoked. Since there are no documented evidence of both poor job performance and medical illness since 2014, the motive then is RETALIATION for my law suit of April 29, 2016. Please refer to **plaintiff exhibit 13**.

**Plaintiff Exhibit # 17: Please refer to the submission of 12/23/18.**
MEDICAL CLEARANCE. Dated 8/18/2016. I was just examined and cleared as medically and mentally fit to work by the defendant employee health service on August 18, 2016. This was less than three weeks before September 12, 2016 when I was unlawfully placed on involuntary medical leave of absence without pay to date using the defendant Regulation I policy as retaliations.

On September 10, 2016, two staff of the defendant Harlem Hospital showed up in my house in MT Vernon New York in Westchester County to intimidate and harass me for filing the April 29, 2016 law suit. These guys are Mr. Diones Aqino and Mr. Marvin Delmar's and they do not live in Westchester County. When I asked them why they were in my house they responded to warn me to withdraw the lawsuit I filed on April 29Th, 2016 against the defendant. They warned that I will be fired if I do not withdraw the lawsuit. I quickly took their pictures as proof.

**Plaintiff Exhibit # 18. : Please refer to the submission of 12/23/18.**
HAND DELIVERED INVOLUNTARY MEDICAL LEAVE OF ABSENCE WITHOUT PAY WRITTEN BEFORE LABOR RELATIONS PERSONEL MET M: Please refer to the submission of 12/23/18.
On September 12, 2016, I showed the picture of the defendant staff in my house on 9/10/2016 and their threat on me to my director Mr. Mark Sollazzo. Mr. .Sollazzo reported to the Labor Relations. Within thirty minute a Labor Relations Specialist MS. Shari Singleton and a Harlem Hospital police officer, Mr. Marshall showed up at my work station. I showed them the pictures of the hospital staff at my house and the identities of the two people in the pictures were confirmed by the hospital police, Mr. Marshall.
Ms Shari Singleton then dictated to me what to write on a pre-written letter she had written placing me on Involuntary Medical Leave of absence without pay and without any investigation even before ever meeting me.

I wrote out MS. Singleton dictated instruction acknowledging she saw the pictures with the staff identified by the police. Ms Singleton then signed and dated it 9/12/16. Despite the Identification and the hospital police saying that I posed no danger to myself, any other staff and hospital properties, Ms Singleton still placed me on Regulation I policy as their M O for retaliation.

**Plaintiff Exhibit # 19. : Please refer to the submission of 12/23/18.**
Objection to being placed on involuntary medical leave of absence without pay. Please refer to 12/23/18 submission.

**Plaintiff Exhibit 21. : Please refer to the submission of 12/23/18.**

7

Independent psychiatric examination by Dr Bruce Schweiger dated 11/9/16. Please refer to the submission of 12/23/18.
I was examined and found with no mental illness and also found capable to work independently. I submitted this to the defendant but was not considered in their decision. This is retaliation.

**Plaintiff Exhibit 22 : Please refer to the submission of 12/23/18.**
Second Independent psychiatric examination by Dr Kingsley Nwokedi dated 11/18/16. Please refer to the submission of 12/23/18. Dr Nwokedi also found me normal with no mental illness and capable of working independently. The defendant didn't consider this report in their decision making because of RETALIATION.

The Hearings: December 5, 2016 and January 4, 2017. Regulation I hearings were conducted as retaliation even though the case did not meet Regulation I standard. There was neither poor job performance nor medical illness.

Illegal Collusion: **Plaintiff exhibit # 24: : Please refer to the submission of 12/23/18.**
**PRB** Appeal Decision: refer to the submission of 12/23/18.
There were reported illegal collusion between the Management staff of the defendant Harlem hospital and the defendant hearing officer Mr. Khan. Mr. Khan advised them not to accept me back on appeal and they agreed. All these were retaliation.
Everything about this case is retaliation disguised as Regulation I police because I filed a lawsuit on April 29, 2016 against the defendant with the New York State Supreme Court.

**PLAINTIFF EXHIBIT # 28. Titled Records Available: Please refer to the submission of 12/23/18.**

**This Exhibit # 28**: proves that examination by the defendant were retaliatory and not objective. The defendant deliberately continues to flood their doctors with fabricated, mischaracterizes and mispresentation of events before and after medical and psychiatric examination. Defendant monitors and controls their providers' reports with multiple phone calls before and after examination to suggest outcomes. All these are retaliatory actions consistent with their MO.

**PLAINTIT EXHIBIT 21: Please refer to the submission of 12/23/18.**
**and 22**: Independent and objective psychiatric examination.

These are the psychiatric examination of the plaintiff by two independent New York State Psychiatrists Dr Shweizer on and Dr. Nwokedi on. Both found me with no psychosis, no mental illness and capable of working. The defendant refusal to consider these reports in their decision making is retaliation and deliberate.

**Plaintiff APPENDIX Z : Please refer to the submission of 12/23/18.**
Second Circuit Summary Order 17-2538" The New York second circuit MANDATE:



Imperative that all the three NY 2ND circuit judges upon review of this case acknowledged that it must be reviewed for retaliation which best fit the Modulus operandi and presentation.

**Plaintiff APPENDIX W #: Please refer to the submission of 12/23/18.**
Letter from my attorney to the defendant Director of Human resources Indramattie Harillal letter to me dated 2/14/ 18 Titled Notice of Impending action. see **Plaintiff Exhibit # 29** for the copy of the Notice of Impending Action. No response to date from MS. Harillal which is evident of retaliation.

**OCTOBER 22, 2018:** PLEASE REFER TO THE TRANSCRIPT OF THE CONFERRENCE WITH JUDGE GREGORY H. WOODS: At the conference, the honorable judge Gregory H. Woods asked the defendant for the current status on the case. The defendant attorney MS.Cassandra Branch said, Plaintiff is reabsorbed and will be posted to another department. The truth is at many stages in the past three years, defendant have held the same position because they know their case have no legal ground meeting Regulation 1 Policy but done in Retaliation using Regulation 1 as smoke screen. Defendant continues pressuring regulatory agencies to accept their position that this case is about disability until the second circuit boldly said the case most like is about retaliation. I am asking this honorable court to be bold in making the plaintiff whole by returning me to my job, pay all my backlog salaries, compensation, benefits (retirement) from 2011 when the defendant director of EEOC Mr. William Marshal admitted to Jami Kaplan of the NYSDHR that my first suspension was a retaliation for reporting defendant to the office of the mayor of the City of New York, an activity that is protected by law. Defendant has continued to use Regulation 1 policy as their Modulus operandi for Retaliation in 2013 and 2016. The evidence are abundant in the exhibits, Defendant Appendix A is a clear example when the defendant Director of EEOC in 2016. Nicole Phillips admitted that I was fired immediately after reporting that the defendant staff came to my home on 9/10/16 to threaten me to withdraw my April 29, 2016 case against defendant or risk being fired. Appendix a then went on to misrepresent, misconstrue and my lawful activities from May 2016 and sent then to their appointed psychiatrist to cloud their objective diagnostic decision making for the defendant "Requested" subjective diagnosis. I therefore deserve to be made whole from March 2011 to date. Also requesting damages of five million dollars for pain and suffering for being subjected to involuntary psychiatric examination, indignity, dehumanization, and impoverishness of being frequently unemployed because of the illegal RETALIATION activities of defendant using their Regulation 1 Policy as smoke screen.

What is retaliation and protected activities? **Retaliation** occurs when an employer punishes an employee for engaging in legally protected activity. **Retaliation** can include any negative job action, such as demotion, discipline, firing, salary reduction, or job or shift reassignment. But **retaliation** can also be more subtle. Include demoting, giving poor evaluations, disciplining, reassigning, reducing pay, or even firing an employee..
- You're Excluded or Left Out. ...

9

- You're reassigned to a Different Shift or Department.
- You're Passed Over for a Promotion or Raise.
- Your Pay or Hours are cut. .
- You Encounter More Harassment or Bullying.
- You're fired from Your Job.

Sometimes it's clear that an employer's action is negative—for instance, when an employee is fired. But sometimes it's not. In those cases, according to the U.S. Supreme Court, you must consider the circumstances of the situation. For example, a change in job shift may not be objectionable to a lot of employees, but it could be very detrimental to a parent with young children and a less flexible schedule.

As long as the employer's adverse action would deter a reasonable person in the situation from making a complaint, it constitutes illegal retaliation.

- My employer took action against me because of my protected activity like my law suite of April 2016 against my employer. Less than five months later I was fired. This is a strong link.

Protected Activity

All of the federal laws prohibiting discrimination (such as Title VII, Section 1981 of the Civil Rights Act of 1866, the Americans with Disabilities Act, and the Age Discrimination in Employment Act) also prohibit retaliation against employees who engage in "protected activity" under these laws.

- Participation: Employees who file a charge of discrimination with the EEOC or a similar state agency, participate or assist in an agency investigation, or file or take part (for example, as a witness) in a discrimination or harassment lawsuit are also protected from retaliation. Courts have ruled differently as to whether this clause protects employees who participate in a company's own internal investigation; however, those employees are protected under the opposition clause, above.

Any "materially adverse" action against an employee may constitute retaliation under Title VII and other civil rights statutes, if the action might deter a reasonable employee from making a complaint or otherwise engaging in protected activity. Because enforcement of the laws prohibiting discrimination depends on employees being willing to come forward with complaints, these statutes have been interpreted generously, to provide broad protection from retaliation.

Examples of materially adverse actions include demotion, discipline, firing, salary reduction, negative evaluations, transfer, and change in job assignments, change in job duties, change in shift, or change in other terms and conditions of employment.

- Timing. This is the most common way to prove retaliation: If the adverse action comes right after the employee complains, retaliation looks more likely. In my case as soon as less than five months after filing a law suit against the defendant.

10

- Lack of other explanations. An employee who can show that the employer had no other reason for taking the adverse action, or that the employer's stated reason for taking action doesn't make sense, will have a stronger argument. Since this case 16 CIV 08882 does not meet the criteria for Regulation 1 Policy It is then a retaliation case for filing a law suit in the New York state Supreme Court with index number 153641 /2016 on April 18/2016 and received by the defendant on 4/29/2016.

EVIDENCE OF APPLYING FOR OTHER JOBS WITHOUT SUCCESS:

**Morgan Parrett** (morgan@cmcwest.com)To:you Details
HR liked your resume and sent it to the hiring manager for review. I'll ask my HR contact if there's any feedback and let you know.

Morgan Parrett
Healthcare Management Recruiter
Clinical Management Consultants
Office (440) 793-7880
Cell (216) 972-2869
Fax (440) 210-7400
morgan@cmcwest.com



# CMC
CLINICAL MANAGEMENT CONSULTANTS

On Fri, Sep 13, 2019 12:15 AM, o.akinde@aol.com wrote:
Good day,

Any feedback from the hospital?

-----Original Message-----
From: Morgan Parrett <morgan@cmcwest.com>
To: o.akinde <o.akinde@aol.com>
Sent: Wed, Sep 4, 2019 5:05 pm
Subject: Re: Application for the position of the Director of Risk Management

I just tried giving you a call, but it seems something happened with the connection. Christ Hospital just reached out and asked if you would be available for a phone interview in the next week.

Let me know what you're availability looks like for Friday and then next week and we'll see if we can schedule something.

Morgan Parrett
Healthcare Management Recruiter

11

Clinical Management Consultants
Office (440) 793-7880
Cell (216) 972-2869
Fax (440) 210-7400
morgan@cmcwest.com

# CMC
## CLINICAL MANAGEMENT CONSULTANTS

On Thu, Aug 15, 2019 4:29 PM, o.akinde@aol.com wrote:
Dear Mr. Parrett,

Thanks for the feedback. Yes, I am a US Citizen and eligible to work in the US.

Best,

Oludotun Akinde


-----Original Message-----
From: Morgan Parrett <morgan@cmcwest.com>
To: o.akinde <o.akinde@aol.com>
Sent: Thu, Aug 15, 2019 9:44 am
Subject: Re: Application for the position of the Director of Risk Management

Hey Oludotun,

Surprisingly quick feedback. They want to send your resume over to the hiring officer, but first they asked me to confirm if you are eligible to work in the US on a permanent and ongoing basis. Can you let me know when you get a chance?

Thanks so much!

Morgan Parrett
Healthcare Management Recruiter
Clinical Management Consultants
Office (440) 793-7880
Cell (216) 972-2869
Fax (440) 210-7400
morgan@cmcwest.com

12

On Thu, Aug 15, 2019 1:29 PM, Morgan Parrett morgan@cmcwest.com wrote:
Hello Oludotun,

Thank you so much for sending that over. I will get your resume over to the hospital recruitment team and let you know if I hear anything back.

Sometimes this process takes some time, but know if there is any feedback from the hospital I will make sure that you are aware.

Have a great weekend!

Morgan Parrett
Healthcare Management Recruiter
Clinical Management Consultants
Office (440) 793-7880
Cell (216) 972-2869
Fax (440) 210-7400
morgan@cmcwest.com

## CMC
CLINICAL MANAGEMENT CONSULTANTS

On Wed, Aug 14, 2019 9:17 PM, o.akinde@aol.com wrote:
Good Day Sir,
Kindly find attached a copy of my resume, cover page and the certified copy of the valid Risk Management Certification for the above advertised position.

I am bilingual in Spanish and English in addition to Yoruba Language.
Looking forward to hearing from you soon.

Best,

**montefiore-jobnotification** (montefiore-jobnotification@noreply.jobs2web.com)To:you Details

13

The following jobs matched your search agent at Montefiore Medical Center and can be found at careers.montefiore.org.

Agent:
Clinical Riak Management
**(Click to modify)**

**Job Matches:**
**CLINICAL MANAGER CMO - YONKERS, NY, US**
**BEHAVIORAL HEALTH CARE MANAGER (Grant Funded) - YONKERS, NY, US**
**CLINICAL PHARMACY MANAGER - BRONX, NY, US**
**ADMINISTRATIVE NURSING MANAGER - BRONX, NY, US**
**ASSOC ADMINISTRATIVE MANAGER NURSING - BRONX, NY, US**
**CLINICAL MANAGER - BRONX, NY, US**
**ASSISTANT DIRECTOR OF NURSING - BRONX, NY, US**
**MRI DIRECTOR - BRONX, NY, US**
**DIVISION ADMINSTRATOR - BRONX, NY, US**
**DIVISION ADMINSTRATOR - BRONX, NY, US**

DEMANDS:
1. To be made whole.
Asking for my complete salary from September 12/2016 to date is paid.
Asking for my health insurance to be restored.
Asking for my retirement updated from 2011 to date
Asking for my social security benefit updated from 2011 to date.
Asking for my union seniority restored.

PAIN AND SUFFERINGS: For the stress of being unemployed frequently to date due to retaliation by defendant.
I am asking for five million dollars. In damages, pain and suffering.

2. I am asking for my back salary from January 2013 to April 2014 due to being unememployed by defendant because of their retaliation scheme.

3. I am asking for my back pay from March 2011 to October 2011 due to being unemployed by defendant because of their retaliation scheme.

CONCLUSION:
This case is about retaliation. The defendant Director of EEOC confirmed to Ms. Jami Kaplan of the NYSDHR in 2013 that I was suspended each time I report the defendant to regulatory agencies. He characterized my protected actions as that of a dangerous person.
This case must continue so the jury can see the transcript of December5 2016 and January 4, 2017 hearing with Ms sharri Singleton of the defendant labor relations

Oludotun Akinde V NYCHHC KCW 8882

Updates on exhibit 3+ on
Submitted 12/23/18

# AHIMA
American Health Information Management Association®

AHIMA CCHIIM
COMMISSION ON CERTIFICATION

This certifies that

## OLUDOTUN AKINDE

No. 0030932

has satisfactorily complied with the requirements of the CCHIIM under the auspices of AHIMA and is therefore qualified as a

## Certified Documentation Improvement Practitioner (CDIP)

April 11, 2014

**Valerie Watzlaf**
AHIMA Board President / Chair
American Health Information Management Association

**Karen Collins Gibson** MJA, RHIA, FAHIMA
Chair
Commission on Certification for Health Informatics and Information Management

**Wylecia Wiggs Harris**
Chief Executive Officer
American Health Information Management Association

Valid Through March 31, 2021

admitting that the two people were positively identified as Harlem Hospital staff by the Hospital Police officer Mr. Marshal.

The jury must also read from the transcript of the hearing that the hospital Police officer Mr. Marshal saying that I was neither a danger to myself, others and hospital properties on September 12, 2016.

Justice delayed is justice denied. Please expedite. It is going four years on.

Be though my guide and my guide and my guardian and hear me when I call. O save me from the snares of hell and hold me lest I fall especially in my golden years.

Oludotun Akinde
Plaintiff Prose. 914-363-3087